## Moore *v.* Fulmer, Appellant.

*Vendor and vendee—False representation as to value—Suit to recover overcharge—Evidence—Rescission.*

In an action to recover an alleged overcharge in the price of real estate sold by defendant to plaintiff, a verdict and judgment for plaintiff will be sustained, where the testimony of the latter and other witnesses, without contradictory testimony by defendant, tended to show that defendant had made the plaintiff certain representations respecting the water supply of the land that were false and untrue, that he did not know the facts which he represented of his own knowledge, but had made them from statements made to him by a person whom he had employed to dig a well on the property.

In such a case the defendant cannot contend that the plaintiff should have asked for a rescission of the contract, if it appears that she did not so ask because of the request of the defendant not to. do so, he stating that to do so would cause him more injury than if she retained the property with the abatement asked for by her.

Argued March 6, 1916. Appeal, No. 11, March T., 1916, by defendant, from judgment of C. P. Pike Co., May T., 1914, No. 5, on verdict for plaintiff in case of Ethelyn P. Moore v. Philip F. Fulmer. Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Assumpsit to recover part of purchase-money of real estate. Before STAPLES, P. J.

At the trial the jury returned a verdict in favor of the plaintiff for $1,207.

On a rule for judgment non obstante veredicto for defendant, STAPLES, P. J., filed the following opinion:

In 1913, the defendant, Philip F. Fulmer, was the owner of a certain piece of land, with buildings thereon, in the County of Pike, and in a conversation with Gardner Crane, he agreed to sell this property for the sum of $5,500, of which Mr. Crane was to receive $500, if he obtained a purchaser for the same; and, upon Mr. Crane informing the plaintiff Ethelyn P. Moore, of the offer made by Mr. Fulmer, and his allowing her to make use of his information and name, she called upon the defendant and asked him at what price he would sell the property, and he said $7,500. Whereupon she called his attention to the offer previously made to Gardner Crane, and Mr. Fulmer, the defendant, admitted that he had made such an arrangement, but that since that time he had, at his own expense, a well driven on the place to a depth of three hundred sixty feet, and obtained what could be reasonably termed an unlimited supply of water; that the water rose to within ninety feet of the depth in the casing, and fifteen hundred gallons had been pumped from that well within one hour without lowering the water in the pipe one inch; that in face of such a supply of water, he figured he should have a profit on the driving of that well in excess of the price given to Mr. Crane. He then said he would be willing to take $7,000, but that was the limit of his reduction. After some other negotiations between the parties, to the effect that Mr. Fulmer should place the purchase-price at the $5,000 he offered it for to Mr. Crane, and what it actually cost him to drive the well, he agreed to the sum of $6,182, stating that what the well cost him was $1,182.

Induced by these statements, Mrs. Moore, the plaintiff, was persuaded to buy the property and she paid $100 down, and almost immediately brought workmen upon the premises to decorate and improve the house and at or about the same time, made a test of the well. It was soon discovered that the well would not produce the

water as claimed by Fulmer, the defendant, and as afterwards it turned out, failed as a well.

The negotiations not having been concluded, the parties met and had a considerable dispute about the matter. Fulmer did not seem to want to put the plaintiff in the same position she was before the transaction took place, and said if they were placed in their original positions it would do damage to his property, it would receive a black eye and become valueless through the publicity of the fact, that there was no water there, and it was finally agreed, that title should pass and Mr. Fulmer execute and deliver a deed to the plaintiff, and plaintiff deliver a mortgage to Mr. Fulmer for the sum of $5,500; but this was in no way to affect nor prejudice the parties and that if it turned out that there was no water upon the property, Mrs. Moore, the plaintiff, should have the right to bring a suit against the defendant for whatever damages she was entitled to. The deed and mortgage were passed, some more money paid, and it afterward being certainly fixed that water was not upon the property, as stated, and Mrs. Moore claiming that she had the right of action or right to defend against the mortgage, Mr. Fulmer requested her to bring a suit for her damages, for, if she claimed a set-off against the mortgage, it would put him in a bad light, as he had already assigned it to some one else.

We gather these facts from the testimony of plaintiff's witnesses, the defendant, not having offered any testimony.

As above stated, it was admitted by the defendant, that the water could not be produced as represented and it was agreed by both parties, plaintiff and defendant, that, if the plaintiff was damaged, she was damaged to the extent of $1,207, and the form of action should not prevent the plaintiff from a right to recover.

The court submitted to the jury the question of whether or not the representations amounted to a warranty and whether there was a breach of the same, the

plaintiff having declared for a breach of warranty in misrepresentation. The counsel for the defendant contended that before the deed and mortgage passed, the plaintiff knew about the failure of the water and should have rescinded the contract. If it were possible for her to have been placed in the same position that she was immediately before the contract was executed, it certainly would have been her duty, with knowledge of the failure of the water, to have rescinded the same; but she had made a payment of $100, and she had been to considerable expense in the employment of men to decorate and improve the house and in testing the well, and, in addition, Mr. Fulmer, the defendant, was not willing that the contract should be rescinded and the parties placed in the same position as they were before it was executed; but, upon the contrary, stated that she should rely on her right to recover for damages, if water could not be found. Surely the defendant having placed the plaintiff in this position, had no right, afterward, to take exception to it and object to the action as brought by her, and contend upon the contrary, that she ought to have rescinded the same; and further, as above stated, he agreed that he would not complain as to the form of the action; and, in this light, we cannot understand how he can take advantage of the suit as brought and claim that the contract ought to have been rescinded.

Did the facts as proven establish a warranty? The jury found that the plaintiff was induced to buy the property by reason of the representations of the defendant as to the amount of water in the well, and which amount, at the time, she had no means of verifying, and the defendant stated that in obtaining this amount of water, he had been put to the expense of $1,182, and that was why he increased the price for the property.

A warranty of property about to be sold is "Any distinct assertion or affirmation as to the quality or character of the thing to be sold, made by the sellor during the negotiations for the sale, which it may reasonably be

497, (1916).]          Opinion of Court below.

supposed was intended to induce the purchase and was relied on by the purchaser": Amer. & Eng. Enc. of Law, Vol. 30, page 136.

The defendant wanted to sell the property at a price considerably higher than what he had a short time previously offered it for and he stated that his increased price was because he had expended the sum of $1,182 in obtaining water by driving a well 360 feet deep and which would yield 1,500 gallons per hour, and stood in the well ninety feet from the surface and that in the face of such a supply of water, he was entitled to a profit in the driving of the well. Induced by this representation, the plaintiff purchased the property. The means were not at hand to establish the truth of defendant's representation. The plaintiff took Mr. Fulmer's statement as being true.

Was there a breach of warranty?

"Any substantial failure in the article supplied to the buyer in pursuance of a contract of sale, to come up to the quality of character fixed by the warranty constitutes a breach of the warranty and proof of it establishes the buyer's right to an action therefor": Amer. & Eng. Enc. of Law, Vol. 30, page 178.

Defendant seems to have taken a wrong view of the law in this case, and assuming that, because of misrepresentations made by the defendant the action should have been in deceit, the plaintiff has no right to recover in an action for breach of warranty. It was not contended at the trial, that the defendant wilfully misstated the facts, but that he stated facts which were untrue and which he might have known were so if he had used diligence and his own senses in ascertaining the truth as to his statements, rather than relying upon what he had been told. (Citing Blygh v. Samson, 137 Pa. 368; Jack v. Hixon, 23 Pa. Superior Ct. 453; McFarland v. Newman, 9 Watts 55; Weixel v. Lennox, 179 Pa. 457.)

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

This case was not one where the plaintiff, at the time

of the sale, had within her power the means of establishing the truth or falsity of defendant's statements. A pump had to be erected to test the well as to the amount of water and it was found, that it was not there. The facts were submitted to the jury, and it found them in favor of the plaintiff. It found under the court's charge, that the defendant made the statements as to the well and the amount of water it would furnish and which statements were untrue, carelessly and recklessly made, when it was within the power of the defendant to have ascertained they were correct, and it further found that they were made for the purpose of selling the property and therefore impliedly warranted the property.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

In the light of what we have previously said, it is unnecessary for us to comment any further on the position of counsel for the defendant as to the duty of the plaintiff to have cancelled the contract, rescinded it or brought an action of deceit. We are clearly of the opinion, that there was a warranty, a breach thereof, that a rescission, placing the parties in the same situation they were before the contract was made, was impossible as refused by defendant, and that he himself requested plaintiff to wait until it was fully ascertained that the water could not be furnished and then to bring a suit for damages.

And now, March 18, 1915, in accordance with the aforegoing opinion, the rule for judgment non obstante veredicto for defendant is discharged.

*Error assigned* was in refusing judgment for defendant n. o. v.

*Henry Spalding,* with him *George R. Bull,* for appellant, cited: Mahaffey v. Ferguson, 156 Pa. 156; Cote v. Christy, 10 Pa. Superior Ct. 318; Schmitz v. Roberts, 26 Pa. Superior Ct. 472; Sulkin v. Gilbert, 218 Pa. 255.

497, (1916).]   Arguments—Opinion of the Court.

*Wilton A. Erdman,* for appellee, cited: Tyson v. Passmore, 2 Pa. 122; Miles v. Stevens, 3 Pa. 21; Babcock v. Case, 61 Pa. 427; Thompson v. Chambers, 13 Pa. Superior Ct. 213; Jack v. Hixon, 23 Pa. Superior Ct. 453; Ohio Valley Trust Co. v. Allison, 243 Pa. 201; Erwin v. Myers, 46 Pa. 96; Latta v. Hax, 219 Pa. 483.

OPINION BY WILLIAMS, J., July 18, 1916:

The parties to this action agreed that the form of action was immaterial; that the defendant had made to the plaintiff certain representations respecting the water supply that were false and untrue; that he did not know the facts, which he represented, of his own knowledge, but had made them from statements made to him by those whom he had employed to dig a well on the property sold, and that he had paid $1,182 for the same. It was also agreed that if the plaintiff was damaged, it was to the amount of $1,207. This left the only question at issue: Was the plaintiff induced by the representations made by the defendant, to buy his property for the price he agreed to sell? The plaintiff testified and produced other witnesses who testified to the truth of her averments, and there was no testimony offered by the defendant. The court below very clearly and distinctly left the determination of this question to the jury and its verdict is conclusive of the fact.

The contention of the appellant, that the appellee should have asked for a rescission of the contract, is fully answered by the record, which shows that she did not so ask because of the request of the appellant not to do so; he stating that to do so would cause him more injury than if she retained the property with the abatement asked for by her and given her by the verdict of the jury.

The opinion of the court below on the motion for judgment n. o. v. fully sustains its conclusion and no useful purpose would be served by a further discussion.

The assignments of error are overruled and judgment affirmed.